After a jury trial on an indictment charging the defendant with the first-degree murder of Cherby Lajoie, she was convicted of second-degree murder.[2] On appeal, the defendant claims there was insufficient evidence to support her conviction. We affirm.
In the early morning hours of October 6, 2012, after he left a convenience store in the Dorchester section of Boston, a group of people attacked the victim. He was brutally beaten, kicked, and stabbed forty times. One such stab wound was to the victim's head, which was inflicted with such force that the tip of the knife broke off and became embedded in his head. He died at the scene.
When evaluating the sufficiency of the evidence, it must be viewed in the light most favorable to the Commonwealth with specific reference to the substantive elements of the offense. See Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979) ; Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). In this case, to establish the defendant's guilt of second-degree murder, the Commonwealth proceeded under a theory of joint venture. This required proof (1) that the defendant knowingly participated in the murder, alone or with others; and (2) that she possessed the intent required for murder. See Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009). To establish second-degree murder, the Commonwealth was required to prove "(1) an unlawful killing and (2) malice." Commonwealth v. Earle, 458 Mass. 341, 346 (2010). Malice can be established by proving any of three prongs: "(1) the defendant intended to cause the victim's death; (2) the defendant intended to cause grievous bodily harm to the victim; or (3) the defendant committed an intentional act which, in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death." Ibid. See Commonwealth v. Grey, 399 Mass. 469, 470 n.1 (1987).
As a starting point, the defendant claims that the evidence proved only that she was present at the scene of the attack, and that she knew it occurred. We disagree. In the light most favorable to the Commonwealth, David Ray, an eyewitness to the murder saw every member of the group (which included the defendant) join in the beating of the victim. This evidence was corroborated by the surveillance video shown to the jury. From the fact that the defendant herself suffered a knife wound, it can reasonably be inferred that the defendant was very close to the attack while the victim was being repeatedly stabbed. From her hand wound, the defendant also left a trail of blood along her flight path with the group of assailants, which lends further support to an inference of her participation. See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("[I]nferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable"). Finally, the video surveillance evidence showed that the defendant fled the group attack along with the other attackers. Not only could the jury infer from this evidence that the defendant shared consciousness of guilt with the group, but the evidence also supported a finding that she was willing and available to assist the others if necessary. See Commonwealth v. Akara, 465 Mass. 245, 255 (2013) ; Commonwealth v. Dixon, 79 Mass. App. Ct. 701, 711-712 (2011). Indeed, she fled to the same MBTA station where the murder weapon was later discovered. The evidence amply demonstrated that the defendant actively participated in the victim's murder.
The defendant also claims that there was a lack of any evidence from which the jury could properly infer that the defendant shared the necessary intent of malice aforethought. We disagree. In the light most favorable to the Commonwealth, through the eyewitness testimony and the video surveillance evidence, the defendant and the others were shown to have participated in a vicious beating and attack on the victim, who was ultimately stabbed forty times.[3] This was coupled with the absence of any evidence that the defendant attempted to stop the attack, or retreat from attack until it was finally concluded. Moreover, we reject the defendant's claim that the evidence does not prove she was aware of the knife. Although the evidence did not show the defendant herself wielded the knife, she was close enough to have been wounded by the knife, the victim was covered in blood, and as noted, she fled with the group after the stabbing ceased. See Commonwealth v. Chhim, 447 Mass. 370, 378-379 (2006) (defendant's continued presence during joint venturers' attack of victim was sufficient to show shared malicious intent). In addition, another eyewitness, Yovannys Kenny, even from his vantage point in Ray's car driving by the attack, could see blood on the victim as he was being stabbed. All of this evidence was sufficient to support the inference of the defendant's knowledge of the knife being employed during the attack.
At bottom, the evidence permitted the jury to find that the defendant participated in the victim's unlawful killing with the specific intent to kill the victim, or to cause grievous bodily injury, or that the defendant's participation in the attack was "an intentional act, which in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death." Commonwealth v. Earle, 458 Mass. at 346. See Commonwealth v. Semedo, 422 Mass. 716, 719 (1996) (jury could infer malice based on evidence that defendant participated in beating and continued to kick and stomp victim after codefendant began stabbing victim); Commonwealth v. Chhim, supra at 380 ("[A] vicious beating of one man by several assailants creates an inference of intent to do grievous bodily harm or, at least, to do an act which would create a plain and strong likelihood of death").
Judgment affirmed.

Ernest Watkins, a codefendant, was convicted of involuntary manslaughter.

Contrary to the defendant's claim, it is not significant that the eyewitnesses were unable to state precisely what each person had done in the attack. See Commonwealth v. Phillips, 452 Mass. 617, 634 (2008) ; Commonwealth v. Akara, supra at 255.